**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF RHODE ISLAND**

UNITED STATES OF AMERICA

VS. CASE NO. 107-M-10M

RONALD SEAGRAVE

**SENTENCING MEORANDUM OF RONALD SEAGRAVE**

## I. INTRODUCTION

On March 23, 2007, Mr. Seagrave appeared before the Honorable William E. Smith, United States District Judge and pled guilty to the one-count information charging bank fraud in violation of Title 18, United States Code, Section 1344, a Class B felony. The Government and Mr. Seagrave entered into a plea agreement wherein the parties agreed to the following:

a. that the Government would not file charges against Mr. Seagrave for Aggravated Identity Theft in connection with the offense of bank fraud against First Horizon Home Loans;

b. the parties agreed that the loss involved in the offense of bank fraud was more than $30,000 but less than $70,000;

c. the parties agreed that Mr. Seagrave did not abuse a position of trust pursuant to U.S.S.G § 3B1.3, and therefore that a 2-level enhancement should not be applied under that provision; and,

d. that the Government agreed to recommend a 2-level reduction in the offense level for acceptance of responsibility under § 3E1.1(a) of the Guidelines.

**The Presentence Investigation Report**

The Presentence Investigation Report ("PSR") has recommended an Offense Level of 11 and a criminal history category of I. The guideline range is 8 to 14 months and is found in Zone C of the Sentencing Table. Mr. Seagrave requests, however, that this Court

consider a term of probation or a period of supervised release.

## II. LAW

### A. Sentencing Guidelines

In *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005)(*Booker II*), the Supreme Court made the sentencing guidelines "effectively advisory". *Booker II at 756*-7. According to the Court, § 3553 still "requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well". *Id.*

In *United States v. Jimenez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006), the First Circuit concluded that the Guidelines were not "presumptively" controlling or "per se reasonable". The Court stated that trial courts should give the Guidelines "substantial" but not "controlling" weight, and "if there are clearly identified and persuasive reasons why [a District Court] should not impose a Guidelines sentence, [it should] consider those and impose a sentence accordingly." *Id.* At 516-517.

The *Jimenez-Beltre* Court outlined an approach for trial judges to use in sentencing. The Court suggested that the process begin with an assessment of the Guidelines' sentencing range, including a consideration of any applicable departures. *Id at* 518-519. Once a Guideline range is established, the trial court should move on to an evaluation of the sentencing factors set out in 18 U.S.C. § 3553(a), along with any other relevant considerations. *Id.* Finally, the sentencing judge is to determine, in light of his/her assessment of those statutory factors, whether a sentence above, within, or below the sentencing range is warranted. *Id.*

### B. 18 U.S.C. § 3553

After *Booker II*, a sentencing court must consider § 3553(a)'s directive that the court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Paragraph (2) of that subsection requires that sentences:

(A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) afford adequate deterrence to criminal conduct;

(C) protect the public from further crimes of the defendant; and

(D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In addition to the minimum necessity standard set forth, § 3553(a)(1) requires the Court to consider both "the nature and circumstances of the offense and the history and characteristics of the defendant". This command effectively enlarges the range of factors to which the Court must give substantial weight. The Guidelines tend to stress the "nature and circumstances of the offense", while § 3553(a) requires the Court to give comparable weight to "the history and characteristics of the defendant" without the limitations previously imposed by the Guidelines. *See, e.g., United States v. Ranum,* 353 F.Supp.2d 984 (E.D.Wis.2005); *United States v. Smith,* 359 F.Supp.2d 771 (E.D.Wis.2005); *Simon v. United States*, 361 F.Supp.2d 35 (E.D.N.Y. 2005)(all assessing a variety of characteristics of the offender and his circumstances as part of post-*Booker* sentencing). In particular, family obligations and the collateral impact on the defendant – such as loss of job and position – are now either relevant where they were not before, or else may be weighted more heavily than the Guidelines suggested.

## III. <u>ANALYSIS</u>

### A. <u>§ 3553(a)(2): The Minimum Sentence Necessary</u>

As set forth above, § 3553(a)(2) lists factors which define a "sufficient, but not greater than necessary" sentence. The first is the need for the sentence to reflect the gravity of the offense, to promote respect for the law, and to provide just punishment for the offense. Mr. Seagrave acknowledges that he has committed a very serious criminal offense. He has no previous adult criminal convictions and this entire affair has had a devastating affect on him. He has lost his good name, his family and his previous job. He is now fighting to maintain a

relationship with and support his three (3) young children. The gravity of this event will impact the rest of his life.

Deterrence, the second factor, will be satisfied by the most minimal sentence, even one of probation or home confinement. A conviction, by plea or otherwise, is profoundly injurious to a person's personal and professional life, even if a minimal sentence is imposed. No rational person would be encouraged to commit this type of crime when the result is a loss of good name, family and career.

As for the third factor, public protection from the defendant, Mr. Seagrave presents a threat to no one. The facts underlying the bank fraud offense to which he has pled guilty are an aberration in an otherwise honorable business career. Despite some false allegations made by his wife during the course of his divorce proceedings, Mr. Seagrave has never been violent or a threat to anybody's person or property. There is absolutely no indication that Mr. Seagrave will commit any crimes in the future.

The final factor, to provide the defendant educational or rehabilitative treatment, is not necessary in this case. Mr. Seagrave does not have any substance abuse issues or any need for "educational or vocational training, medical care, or other correctional treatment". Upon completion of his sentence, he intends to apply his education, skills and experience to being a good and supportive father and a productive member of the working community.

**B. <u>§ 3553(a)(1): The Nature and Circumstances of the Offense</u>**

As noted above, bank fraud is a serious offense. Having said that, there are several circumstances in this case which militate in favor of a lessor sentence than the range suggested by the Guidelines.

First, this offense was not committed to afford a lavish lifestyle or to permanently deprive the bank of its loan money. This is not a defense to the government's charges, but it is an

aspect which the Court should consider. As stated in his letter to the Court, Mr. Seagrave's family was drowning in a financial mess and it became increasingly difficult to pay all of the bills and maintain the life to which his family had been accustomed. He fully intended to, and in fact was in the process of, making repayments on the loan to the bank.

**C. <u>§ 3553(a)(1): The History and Characteristics of the Defendant</u>**

The *Booker* decision requires that these factors be weighted on their own merits. As previously noted, the history of Mr. Seagrave does not include any adult convictions or other such trouble. He has been a hard-working family man who has continuously maintained employment. He has three (3) young children that have been taken from him since these events occurred and has a child support obligation of $690.00 per week. He currently works about 60 to 70 hours per week to meet that obligation. Outside of this event, he has demonstrated an ability to live constructively in and contribute to society. He now simply wants to work hard to re-establish his relationship with his kids and to continue to provide for their financial security.

Mr. Seagrave's plea of guilty, and the conduct that led to it, are aberrant and an exception to an otherwise praiseworthy personal and professional life. Aberrant behavior has in the past been a basis for departure under the Guidelines. *See United States v. Grandmaison*, 77 F.3d 555 (1st Cir. 1996).

**IV. <u>CONCLUSION</u>**

For the above reasons, Mr. Seagrave asks this Court to impose a sentence of probation or, in the alternative, a split sentence involving home confinement and probation.

Plaintiff,

By Counsel,
McKINNON & HARWOOD

/s/ Michael E. Sendley
Michael E. Sendley (#5591)
1168 Newport Avenue
Pawtucket, RI 02861
(401) 723-9655
(401) 722-9106

**CERTIFICATION**

I hereby certify that on September 7, 2007, a true copy of the within, was served on Lee H. Vilker, Assistant U.S. Attorney, District of Rhode Island, at lee.vilker@usdoj.gov by electronic "CM/ECF" means only and a true copy of the within was mailed to Heather McLoughlin, UNITED STATES DISTRICT COURT, **OFFICE OF THE PROBATION OFFICER,** 2 Exchange Terrace, Providence, RI 02903-1779.

/s/Michael E. Sendley, Esq._____
Michael E. Sendley, Esq. (#5591)